Good morning. May it please the Court, my name is Jacob Hafter, and I represent Dr. James Tate, Jr., who is present with me today in the galley. I respectfully request to reserve three minutes, and I'll try to manage that accordingly. This is a case of due process as it relates to physician hospital privileges at a county hospital. It's already been held by this Court that privileges in this very hospital are a constitutionally protected property interest, one that cannot be limited, restricted, or deprived without adequate due process. What's the action of the defendants in total that deprived your client of his property interest? Let's assume that the district court was wrong in saying that he didn't have a property interest, because I think he did. What's the action of which you're entitled to complain? The real action is this. There's two. One is this limitation or these, as they call it, conditions. Thank you. I want to focus on that. And let me just start by saying I think the eventual termination of privileges is an adverse action that triggers your property complaint. But I can't find anything in the bylaws that suggests that placing limitations or conditions on privileges is an adverse action that gives rise to. After all, the property interest is defined by the bylaws. That's what our cases say. And bylaws say that you can't take away somebody's privileges without certain procedures. I understand your argument with respect to the eventual termination of procedures, but of privileges. But I don't understand your argument with respect to the imposition of conditions. Do you have a property interest in not having conditions imposed on privileges when you've been extended full privileges at the hospital and they're just saying we want you to do some other things before we finalize your application? What are those other things? I mean, let me answer your question and let me explain. I've learned to do that in this Court. First of all, I think the condition is that they said you need to enter into this evaluation and treatment program. But you need to do three things. You need to do three things, and then we'll finish processing your application for privileges. But in the meantime, you have full privileges. So what property interest were you deprived of during that interval? Well, I am reasonably sure that if a bar were to say or a court were to say to a member of the bar, hey, you need to go get treatment for drug and alcohol as well as anger management, without giving that attorney an opportunity to even defend or address whether or not that treatment's necessary or required, I think everybody would say, oh, that's a stigma issue. But I know we might say, oh, but I'm asking a different question. What is it? Do you have a property interest in not having because that's the allegation here, that you were deprived of your property without due process of law? Well, I think the problem is he never had an opportunity to rebut or be heard on that on those allegations that supported that finding that he needs those conditions. Tell me where the bylaws say, tell me where the bylaws say that you have the opportunity to contest conditions if you are extended full privileges while those conditions are imposed. The problem is in the 3-month recredentialing period. Because Section G of the bylaws, I have the page here. I mean, I can't, I can't, that's not, you agree with me, the imposition of conditions, not restriction of privileges. You had full, your client had full privileges during this 9-month period. Right. Is not listed as an adverse action. He was required to do something above and beyond. Yeah, but that's not the question I'm asking. The question I'm asking is there's a list of 13 adverse actions that trigger, that trigger a whole bunch of rights. Denial of an application for reapplication in the staff is one of them. Termination of privileges is one of them. So I think you've got a very solid argument that on that point, you have due process rights that were triggered. I just can't find anything in the bylaws that say, that say you have an opportunity to appeal conditions that are imposed on the exercise of your privileges as long as they don't restrict your privileges. Well, and, Your Honor, they were restricted by a 3-month period. Because if you look at page 11 of the bylaws, it's volume 2, page 73 from the excerpt of record, it discusses the term of reappointment. Right, right. It's a 2-year term of reappointment. It says unless there's an identifiable health disability. And so without, put that aside, without the identifiable health disability, he should have been getting 2-year periods of subsequent privileges. So when he was only given 3 months, that was a limitation on his privileges because he wasn't given 2 years. But the only way he was hurt was by the eventual termination. For those 9 months, he had full privileges. You agree? He was hurt because he had to keep going through the expense and the process of reapplying. Do I understand correctly that it was a Judge George rule that he had no expectation he has a property interest in the staff privileges, but no expectation of a 2-year appointment? Is that the logic of his ruling? To some respect, that was, which doesn't make sense in light of the reappointment clause in the bylaws. I understand that. Now, if we agree with you that Judge George is wrong about that, that's the end of the ballgame for them, right? Then it has to go back and he has to decide. I appreciate your time. Thank you. Is that right? Yes, Your Honor. And we don't know what issues will be litigated in a due process hearing, right? That's not before us. Correct. They never gave him a due process hearing. Well, I understand. That's your contention. You can go back and argue that they did something wrong, but it's hard for me to see why in terms of the case in front of us, anything matters except whether or not the termination was improper. If the termination was, if you had no property interest in not being terminated, then it doesn't matter what they did along the way. Well, they're going to claim that it wasn't a termination. I mean, they're going to claim that it was. Well, I understand. And I'll talk to them about that when they get up. But if there was a termination at the end of the 9-month period, and it seems to me there was, and you had a property interest in not being terminated without procedures, doesn't that end the due process analysis for us? We have no idea whether or not you got appropriate procedures, whether a hearing was necessary, whether in light of the facts of this case in which involve a drug, which involve your client having taken some substance, because we know that the urine test tested it in a certain way. We have no idea what kind of procedures are necessary. Your Honor, if this Court were to simply say it wasn't a reappointment for a limited amount of time that just expired, that really what they did was a de facto termination and he should have been given due process rights, go back and determine whether or not he received due process rights, then we would be fine with that. And it seems to me that focusing on the intermediate extensions does you no good, because if at the end of the day there wasn't a deprivation by termination, you didn't lose anything in the intermediate extensions. The problem is, is if you don't view the arduous hurdles that they placed before him.  Well, he didn't jump through the arduous hurdles. He did everything possible. I know. Look, I mean, I'm not sympathetic on that point. The record shows is that the Nevada Association said, fine, we'll do all this stuff. All you have to do is say you're here voluntarily. And your client said, I'm not here voluntarily. I've been ordered. And so he's the one who refused to comply with the things.  I don't know if that's true. But don't tell me how arduous these hurdles were. Your Honor, I think that that's a question of fact that needs to be determined with all due respect. And I think also. I interpret it the other way. Sitting where you are, I think it's easy to say that it wasn't an arduous hurdle. But I was with Dr. Tate every step of the way. And I could tell you in meetings with Dr. Mansky and meetings with these people, he submitted to drug testing. He submitted to urine testing. He submitted to all of these issues. He went above and beyond and obtained psychiatrist reports from independent people throughout the country and showed all of this to the hospital. Could they have terminated his privileges simply because his drug testing indicated that he had taken a drug? Drug testing did not indicate anything, Your Honor. What they're trying to bring up is muddy the water by an issue that happened at a subsequent hospital years after the event occurred. And there's various other issues that occur with that case. But there was a drug test that was positive. The drug test in this case from UMC was absolutely unremarkable. Later drug test indicates what? Your Honor, in 2011, he was working at a different facility. And he was told that a surgery was to occur when he didn't think that the surgery was to occur. He went to the hospital, went to speak to the patient. No operation occurred. The anesthesiologist preempted and took the patient before Dr. Tate could even give a pre-op exam, anesthetized him, put him under. Dr. Tate couldn't find the surgical spot. It wasn't marked properly. And then he got upset to what happened in that case. And somebody smelled alcohol on his breath, and he did have an alcohol level under the legal limit on his breath because he had wine at lunch. But no patient care occurred. Nothing occurred in that case. And no patient harm occurred in that case. But that was a different hospital. Years later, in part, Dr. Tate had a really hard time with what happened at UMC, that he gave 23 years to this hospital as a trauma surgeon, and they basically kicked him out the way they did. It caused a lot of issues and problems, which is why he did drink during the day and during lunch. But those are all factual issues that will come out, and they're not necessarily related to this issue here. I see you're down to about four minutes. Let me see if Judge Gould has anything. Just what precisely is the relief that you want? If we were to reverse and remand, what instructions would you want us to give to the district court? Thank you, Your Honor. What we're looking for is the opportunity for Dr. Tate to have his day in court. We want to be able to be heard on the 1983 claims that he was deprived adequate notice and opportunity to be heard. And ultimately, he lost his career as a trauma surgeon for that, and we'd like to be able to seek damages for that loss. That's what we're looking for here, Your Honor. Okay, thank you. Thank you, Mr. Hefter. Thank you. Good morning. May it please the Court. Tom Ryan with me as Brian Blakely. We represent all the defendant appellees with the exception of Dr. Manske. The U.S. district court order granting summary judgment, admittedly logical, even hyper-detailed, got it right. It rejected the core contention of Dr. Tate, which was that the shortened appointments, the three-month reappointments, ought to be deemed adverse because they effectively limited the exercise of responsibility. And so, I think that the court has done that. But eventually, nine months down the road, you say to Dr. Tate, go away and don't come back. And I was listening to the colloquy between you, Your Honor, and the other. Right. And isn't there at least a question of fact about whether that's an adverse action? The counsel writes him and says, ha-ha, you've resigned. It doesn't say that, but it says, we think you've resigned. And Dr. Tate's counsel says, he hasn't resigned. You've terminated his privileges. If in fact his privileges were terminated in September of whatever year, the end of the nine-month period, August 31st of 2009, I think it is, isn't that an adverse action? Not if you consider the fact that Dr. Tate reapplied for privileges on three occasions. So you're saying that it would have been an adverse action if he filed a new application on that date, but it's not an adverse action because in advance, on August 31st, you told him that your privileges are going to be terminated? He never reapplied for yet another three. It was a voluntary relinquishment. Right. But the judge didn't find voluntary relinquishment. What the judge found was that there was no property interest here. And if the judge was wrong in finding that there was no property interest, isn't there at the very least a factual question about whether there was voluntary relinquishment? The judge found that there were two species of protected interests, one in appointment to staff membership and one in connection with the exercise of clinical privileges. What he specifically determined, however, was the protected interest in the exercise of clinical privileges was no greater than, could not be in excess of, was limited by the temporal scope of the term of staff membership. Sure. And I agree with that. But in September, is it 2009? Do I have the right year? Yes. That's correct. In September of 2009, Dr. Tate, who very much wanted to continue to practice at this we're not allowing you to practice anymore. Counsel dressed that up and said it was a voluntary relinquishment, and maybe it was under Nevada law. I have no idea. But Dr. Tate says, and his counsel says, we're not voluntary relinquishing anything. You're terminating our privileges. And the district judge never addressed that because he said there's no property interest, so I don't have to worry about whether his privileges were terminated. What the way I read the district court opinion, Judge George said that there was never another application after the three successive three-month reappointments to staff membership. They gave him three times to come up to the plate and swing the baton. He chose not to reapply. That is a voluntary relinquishment. Really looking at this case, can we possibly conclude that Dr. Tate voluntarily walked away from this hospital? His lawyer is writing letters every seven seconds at the end of August and the beginning of September, some of them may not be right, saying we're complaining, we're putting you on notice. He wants to keep practicing at this hospital. How can we conclude as a matter of law that this was a voluntary relinquishment? I think you can conclude that by not submitting another reapplication for whatever period of time, whatever temporal scope would be attached to yet another reapplication for staff membership, that he made a determination at some point that he was just not going to comply with and he was going to resist any notion that he had to comply with the conditions that were placed upon his reappointments. And that, to me, constitutes a voluntary relinquishment. Can I ask you, Judge George says the Court concludes that for credentialing applicants, the bylaws and credentialing manual do not create a or define a protected interest in a two-year appointment. It's only an expectation. And when I look at Section D of the bylaws, it says appointments are for a period of two years, except that they could be more frequent and so forth. I'm having a hard time understanding how Judge George got to that conclusion. I understand the question and I struggled with that as well. I think Judge George answered it in his district court order granting the motion for summary judgment. He makes a distinction between the reasonable expectation of Dr. Tate to have a two-year reappointment to staff membership. As a matter of fact, the opening brief of Dr. Tate's counsel talks about that being a reasonable expectation, quote, unquote. The district court, however, noting the need for precision in the use of language, said it would be facile. That's the term that the district court lists. To argue that a three-month, i.e., shortened appointment to staff is tantamount to a denial of appointment and therefore an adverse action. And he said there are three reasons why that conclusion or argument doesn't work. But it doesn't matter, does it, if at the end of the nine months, the hospital had given Dr. Tate privileges for the remainder of the two-year term, we wouldn't be here, right? If he would have reapplied, we never know. We don't know. I understand your position on that. But if they had at any of these points along the way said, yeah, we had you on a three-month or a six-month, but now we're going to give you the rest of the two years, we wouldn't be here. I don't know. That's a hypothetical. Of course it's a hypothetical. Getting back to Judge Silverman's question, which I didn't have a chance to respond to, Judge George made a distinction between, is bylaws Article 3G, which talks about the two-year reappointment to staff being the sort of the ordinary thing, the standard thing, is that merely an expression of an expectation or is it the delineation of an entitlement. You may or may not agree with that. But he said that that was an issue that he, Judge George, had. He then went on to say as reason number two, neither the bylaws nor the credentialing procedures manual recognize any sort of shortened appointment, recognize any sort of appointment to staff membership less than two years as an adverse action or recommendation. And we're paying particular language to the what is defined as the adverse action in the bylaws because it says nothing else other than these 13 things gives you the procedural rights that Dr. Tate says he was deprived of. So let me summarize where I think you are. Let me just, I want to make sure I understand that. With respect to the three-month appointments, your position is they weren't adverse actions under the bylaws, right? Yes. Yes. And with respect to Dr. Tate's eventual leaving, you think it was voluntary? Yes. Okay. The third reason why the two-year appointment standard language doesn't mean that there was an adverse action in connection with the three-month or shortened reappointments to staff membership is Judge George pointing out that it seems to be inconsistent with, contradicted by, the credentialing procedurals manual Article 2T, which indicates that a shortened appointment to staff membership would equal or be the same as a denial of appointment only if it precluded a reapplication for two years. That's the thrust of the credentialing procedurals manual at Article 2T. That didn't occur here. Dr. Tate reapplied for another three-month appointment to staff membership, again subject to the same conditions that he never met, and then he applied for yet another appointment to staff membership. Well, here's what I'm worried about. If everybody else gets two years and he has to keep doing it every three months, why doesn't he get an opportunity to contest whatever it is that brought that about? If he would have met the conditions, we wouldn't be here. Well, I mean, you say he didn't meet them. Maybe he says he met them. I mean, why doesn't he get a chance to have some kind of due process on why this has happened? Well, the record is clear here that he never even signed the conditions for participation which were required under the Nevada Health Professionals Assistance Foundation. But that only goes to what kind of process you might have to give him if there were due process hearing. I've read counsel's letter which says you're not entitled to a fair hearing. How that fair hearing would be resolved is a separate issue. It might be a slam dunk. It might be summary judgment. It might be judgment on the pleadings. That's not the issue. What your position is is that he's entitled to no hearing at all. That's correct. Okay. So it really doesn't matter what he did or didn't do. That would come out at a hearing. The question is whether he's entitled to a hearing. That is the fundamental question, yes. Counsel, this is Judge Gould. In answering Judge Hurwitz, could you please explain why there's no need for a hearing on the request for conditions? Because I think if we pay attention, as we should, and obviously as Judge George did, to the 13 specific definitions of adverse actions under the bylaws and the language with regard to adverse actions or recommendations under the companion credentialing procedurals manual, there's no statement as to or anything that implies, let alone indicate or suggests, that the imposition of these three conditions constitutes an adverse action or recommendation. As a matter of fact, the tag-on language after Article 12A in the bylaws explicitly says that the 13 definitions are exclusive and there are no other actions undertaken by the medical executive committee, the governing arm of the medical and dental staff, that give rise to any procedural rights under the fair hearing plan. So if they say you have to do these three things and he doesn't think they're just, and they say, well, do them or you're out, that's just his tough luck? Is that? Or you can only contest them when you throw them out. I think they are not adverse actions. If we're going to follow the bylaws and the bylaws are important and all parties agree and the judge agrees that the language of the bylaws is the important thing that governs what goes on here, then we have to follow those bylaws. He has no remedy at all? He has a remedy if he suffers an adverse action. Okay. I'm looking at the board minutes, which are at ER 406 or so, and I find that the board has not taken any action to remove Dr. Tate from the staff. Why isn't that an adverse action? Because it was a voluntary relinquishment. It wasn't a denial of or a revocation, suspension, restriction of any exercise of clinical privileges. So all of these actions taken by the board and by the, there's a recommendation by the MEC that Dr. Tate's staff privileges be denied. You think they're all because he's voluntarily resigned? Why do they need to deny his privileges if he's voluntarily resigned? If he voluntarily resigned, he has removed himself from staff privileges. But there's, I find a recommendation by the MEC that his staff privileges be denied. I think somebody has to bring it to the attention of the board of trustees acting. And then the board of trustees approves that recommendation and removes him from the medical staff. Why isn't that an adverse action? I come back to the answer that I've given a few times. Because it's all based on his voluntary relinquishment. That is. I only have a minute and 20 left. And I see there are alternative bases for the affirmance of Judge George's ruling. What I call the even-if argument. Even if there was a protected interest in a two-year reappointment to staff, there are still multiple hurdles with respect to the liability of the parties that we represent. With regard to the trustees or UMC, where is the official policy that, or a custom of deprivation that Dr. Tate is attacking? The attack here is just the opposite, that there was a failure to follow the bylaws, at least as alleged by Dr. Tate. Where is the personal participation, the integral participation on the part of the trustees in promoting this deprivation that Dr. Tate complains about? Who are the appropriate defendants here? The appropriate defendants would be UMC. The trustees are redundant because they're sued in their official capacity. Is the UMC a suable entity? Yes. The UMC is a suable entity for purposes of Section 1983. The medical staff, that is where there is some confusion. I think the confusion is a product of Dr. Tate's own pleadings and how they've morphed over time. The original complaint and the first amended complaint characterized the medical and dental staff as a subdivision of UMC itself, a public entity. It was only in the second amended complaint, which is the one that Judge George dismissed on summary judgment, that the medical and dental staff has become. I want to go back to the record here because I'm having trouble with your position. There's a board meeting at which a bunch of orders are made. And I'm looking. It's 406 or 409 of the record. There's a block for resignation, and a bunch of doctors' names are listed. Allen, Cohn, et cetera, et cetera. And then there's a separate block, sub F, which says remove from staff. Dr. Tate is not listed under the resignation ones. He's listed under the remove from staff ones. And the reason is failure to complete provision, prov mon. I don't know what those are, but I assume they're provisions of something. Why isn't that? So under that, given this piece of paper, isn't there a factual issue about whether or not he was removed rather than resigned? I'm looking at the board action. Here are a bunch of resignations. And here's the people we're removing from the staff. And then he gets a letter that says we have removed you from the staff. Consider the matter of your credentialing. The board has accepted the recommendation that a result of your failure to comply with conditions to your reappointment, you be removed from the staff. That may all be voluntary resignation, but why doesn't it at least create a fact question about voluntary resignation? It looks like your client told him he was removed from the staff. He was removed from the staff because there was no evidence of compliance with the three conditions and he chose not to reapply. But that's not what the letter says, is it? It doesn't say you didn't reapply. The letter from the UMC says you have been removed from the staff for failure to comply with the conditions of your appointment. That sure sounds like an adverse action to me. I think I've responded to that already with my voluntary relinquishment. Just one point in closing. With regard to Dr. Ellerton, looking at the 13 definitions of the bylaws, qualified immunity, Fularski case, U.S. Supreme Court, the other claims, contract, even if there was a contract, aren't there multiple releases? And there's a bunch of defendants that he may have argued about on appeal, at least in the opening brief. So my question is, who's the one appropriate defendant here, just UMC? In my view, the trustees acting in their capacity, the Clark County Board of Commissioners acting in their capacity as the trustees for UMC, they did not have the requisite degree of integral participation in the particular conduct or acts. Scalia. Who is the appropriate defendant in your view? He went to court. He sued somebody. Who should he have sued? All of these are appropriate defendants, I think. It's just that none of them is liable under the circumstances as a result of either Judge George's analysis, who's protected. No. You've argued that the medical staff is not suable as an entity, because, right? You're arguing the medical staff wasn't suable. Well, we cited the court to the Tenth Circuit decision in Lippold. I don't know how enthusiastically I want to try to argue the legitimacy of the Lippold decision, but I wanted to bring it to the court's attention. But the common law rule in Nevada with regard to a nonprofit, unincorporated association like the medical and dental staff is that liability is the liability of the association. If there is any liability, if at all, it's not the liability of 1,200, including 300 podiatrists. Judge, can I try once more? One more question and then we're going to turn it on. We're going to have to sort out the various claims in this case. And let's assume for purposes of discussion that there's a due process deprivation here, and Dr. Tate is entitled to proceed against someone. Is there someone as between the trustees and the UMC, which is the appropriate defendant? There is no – I don't draw a distinction between the trustees being sued in their official capacity as trustees of UMC. They're one and the same. So they're both appropriate defendants? That's what you said about five minutes ago, I think. Yeah. It's redundant to sue both. You think they win on the merits, but they're suable. They're suable entities? That's my question. Yes. Okay. Okay. Thank you. Mr. Hafter. Thank you, Your Honors. I'd like to comment to a couple of issues. One, I'm kind of concerned that my colleague said he's here representing everybody but Dr. Mansky. But in our notice of appeal, one of the things that we did very clearly was include the order that we're appealing the dismissal of Dr. Mansky on a motion to dismiss without the right to amend. Now, another case I had before you against the same hospitals in Chudikov, this Court made it very clear that plaintiffs are to be given a very, very wide opportunity to amend on a motion to dismiss. We thought it was harsh that Dr. Mansky was dismissed without an opportunity for leave to amend. And Dr. Mansky hasn't made an appearance in this appeal, and so we would hope that summarily at least we could win on that point. Who is he in the case? What's his party? Dr. Mansky is the individual who ran this Nevada Health Professions Foundation. You argued somehow in your motions that he was in cahoots with the hospital, and the judge said there wasn't any evidence of that at all. But we weren't able to get into discovery. I know you couldn't produce any evidence of it because you didn't get into discovery because the judge knocked it out, but isn't that an implausible allegation that he was somehow conspiring with? You have no idea who these people are, Your Honor. I have no idea who you are either. You're right. And with all due respect, this is the third doctor in a short amount of time that the hospital has destroyed to date without sounding arrogant. We've obtained over $15 million of payments for those other two doctors from these people who they say can't be sued. Let's focus on Dr. Mansky for a second. I realize he didn't file a brief, and we could summarily reverse because of that, but we're not required to, are we? I don't believe you are, Your Honor. So we can look at the merits of the district court's dismissal of Dr. Mansky. Correct. I think we've pled enough to at least allow us to get into some discovery on the issue. And do you contest in your appellate brief, I'm trying to remember, do you direct any of your opening brief to Dr. Mansky? We do, Your Honor. So the other thing, like you said, where's the pattern or practice of deprivation, the custom of deprivation? And that's why I raised these other two physicians. Around this same time, this medical staff and Dr. Ellerton were destroying physicians' careers left and right for various reasons, and the board knew about it. And so much so that Dr. Tate went, and we included this in the brief and the excerpts, that he went to a board meeting and he, in public comment, basically said, hey, this is what's going on. And the trustees, I mean, they were on notice. They knew that this was going on, and they refused to do anything, basically rubber stamp whatever the medical staff put in front of them. But we believe that the board did have knowledge of what was going on in these cases. But that's a merits point, isn't it? Correct, Your Honor. But both you agree with your opponent that they're an appropriate defendant? With respect to the why he didn't reapply at the end of August when his privileges expired, you have to look at the correspondence that went on in July and August amongst the parties. And we were making it very Dr. Tate had his application for reapplication ready to go and be submitted at the end of August. But we get this letter from Brad Ballard, counsel for UMC at the time, saying, you're not meeting your conditions. And we're saying, well, hey, how do we meet those conditions? We've given you everything that we can do. How do we meet those conditions? And they say, it doesn't matter. You're not going to be reappointed. And so, yes, he did not technically file an application at the end of August of 2009, but he sent letters, he sent correspondence. We were doing everything that we tried to do to obtain reappointment and the like. Thank you, Mr. Heffter. I see you're out of time. Mr. Ryan, thank you as well. The case just argued is submitted. We'll stand and recess for the day.
judges: Silverman, Gould, Hurwitz